<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STANLEY MOISE o/b/o S.H.M., <br><br> Plaintiff, <br><br> v. <br><br> COMMISIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 23cv3853 (EP) <br><br> **OPINION** |

**PADIN**, **District Judge.**

Plaintiff Stanley Moise, on behalf of his son S.H.M. (the "Child"), appeals Defendant Commissioner of Social Security's denial of disability benefits under the Social Security Act (the "Act") related to the Child's autism spectrum disorder.[1] Because, as detailed below, a Social Security Administration ("SSA") Administrative Law Judge (the "ALJ") denied benefits without adequately articulating why, the Court will **VACATE** the ALJ's determination and **REMAND** for further proceedings.

**I.    BACKGROUND**[2]

On December 6, 2019, Plaintiff applied for supplemental security income benefits on behalf of the Child, alleging disability since August 23, 2015. R. 26, 52. Following review of the record by two state agency physicians and two more state agency psychologists, the SSA denied Plaintiff's claim at the administrative level, and again on reconsideration. R. 46-77.

Upon Plaintiff's request, the ALJ held a hearing on March 3, 2022. R. 25-45. On April 15, 2022, an ALJ denied benefits in a written opinion. R. 15-21 (the "ALJ Op."). After the SSA

---

[1] *See* 42 U.S.C. §§ 405(g), 1381, *et seq.*
[2] These facts are drawn from the administrative record below. D.E. 3 ("R.").

Appeals Council denied review on May 24, 2023, R. 1, this appeal followed, D.E. 1. Plaintiff and Defendant have each filed briefs. D.E.s 8 ("Pl. Br."), 15 ("Opp'n").[3]

## II.  ANALYSIS

### A.  General Standard of Review for ALJ Decisions

This Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). But the ALJ's factual findings are reviewed solely to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (cleaned up); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 U.S. Dist. LEXIS 49994, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (cleaned up); *see K.K.*, 2018 U.S. Dist. LEXIS 49994, at *4.

The substantial evidence standard is deferential; the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.")

---

[3] Plaintiff did not reply. The Court notes that Defendant's opposition focuses primarily on the deferential standard of review of ALJ decisions; the thrust of this argument is that the ALJ's Opinion, read as a whole, "allows for a subsequent reviewer to trace his reasoning and permits meaningful judicial review." *See* Opp'n at 13-14. For the reasons below, the Court disagrees.

(citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 U.S. Dist. LEXIS 49994, at *4 ("The district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

However, even this deferential standard is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."). The Court must "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 U.S. Dist. LEXIS 49994, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (cleaned up)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 U.S. Dist. LEXIS 49994, at *4. The ALJ decision thus must be set aside if it did not take into account the entire record or failed to resolve an evidentiary conflict. *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 U.S. Dist. LEXIS 49994, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06.

### B. Standards For Finding That a Child is Disabled

The Social Security Act establishes a three-step sequential evaluation for determining whether a child is disabled within the meaning of the statute. 20 C.F.R. § 416.924(a)-(d). The claimant has the burden of proving disability. 20 C.F.R. § 416.912(a)(1).

At step one, the ALJ determines whether the claimant is currently working and if the work performed constitutes substantial gainful activity. 20 C.F.R. § 416.924(b). If so, then the inquiry ends because the claimant is not disabled. This step is not at issue; the parties do not dispute the ALJ's finding that "[t]here is no evidence of work activity on or after the application date." ALJ Op. at 2, ¶ 2.

At step two, the ALJ decides whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 416.924(c). If the claimant does not have a medically determinable impairment, or if the claimant's impairment is only a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations, the inquiry ends because the claimant is not disabled. *Id.* This step is likewise not at issue; the parties do not dispute that the Child has autism, a severe impairment. ALJ Op. at 2, ¶ 3. Thus, the Court turns to step three.

The dispute centers on the third step, which focuses on the severity of the child's impairments. At the third step, the ALJ decides whether the claimant's impairment or combination of impairments "meet[s]," "medically equal[s]," or "functionally equal[s]" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If the claimant has an impairment that meets or medically

or functionally equals the requirements of a Listing, and if that impairment also meets the statute's duration requirement, the claimant is disabled. 20 C.F.R. § 416.924(d)(1).

    **C.    The Court is Unable to Meaningfully Review the ALJ's Findings Regarding the Severity of the Child's Impairments**

        1.  *The Court is unable to meaningfully review the ALJ's finding that the Child's impairment or combination of impairments <u>medically</u> equals a Listing*

An impairment or combination of impairments medically equals a Listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). When determining whether an impairment medically equals a Listing, the ALJ considers all the evidence in a claimant's record about the claimant's impairment and its effects on the claimant that are relevant to a finding of medical equivalence. 20 C.F.R. § 416.926(c).

The ALJ first found that the Child "does not have an impairment or combination of impairments that meets or medically equals" a Listing. *Id.* ¶ 4. Specifically, the ALJ found that the Listing's requirements "are not met because the requirements of subsection A are not completely satisfied. Additionally, there is no evidence of an extreme limitation of one, or marked limitation of two, of the areas of mental functioning noted in subsection B of the listing." ALJ Op. ¶ 4.

The ALJ's discussion appears to refer to Listing § 112.10 for autism spectrum disorder for children between ages 3 and 18. *See* Social Security Administration, *Disability Evaluation Under Social Security*, *112.00 Mental Disorders – Childhood*, https://perma.cc/4YVU-BB75. The autism spectrum disorder Listing requires:

    A.    Medical documentation of both . . .
        A.  Qualitative deficits in verbal communication, nonverbal communication, and social interaction; and
        B.  Significantly restricted, repetitive patterns of behavior, interests, or activities.

>  AND
>
>  B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning.
>     A. Understand, remember, or apply information.
>     B. Interact with others.
>     C. Concentrate, persist, or maintain pace.
>     D. Adapt or manage oneself.

*Id.* (cleaned up).

However, beyond stating that "the requirements of this [L]isting are not met because the requirements of subsection A are not completely satisfied" and that "there is no evidence of an extreme limitation of one, or marked limitation of two, of the areas of mental functioning noted in subsection B," the ALJ does not explain any further in this section, evading meaningful review by this Court. ALJ Op. at 2, ¶ 4. The ALJ does not, for example, specify which requirements are met or unmet, which areas of mental functioning were considered, or the manner in which the ALJ weighed—or, indeed, considered at all—any evidence.

A potential explanation for the absence of any consideration is that the ALJ chose to subsume this analysis into the following section discussing whether the Child's impairments *functionally* equal a Listing. That is, the ALJ found that the Child's impairments do not *functionally* equal a Listing (a lower standard that can rely on non-medical evidence), and therefore cannot possibly *medically* equal a Listing. However, for the reasons below, the functional-equivalence analysis also evades meaningful review.

> 2. *The Court is unable to meaningfully review the ALJ's finding that the Child's impairment or combination of impairments <u>functionally</u> equals a Listing*

If "the [claimant's] impairment does not medically meet a [L]isting . . . the examiner must determine whether the impairment functionally equals a [L]isting." *Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 560 (3d Cir. 2005). A court determines whether a claimant's impairment

6

"functionally equals" a Listing by evaluating the following six domains of functioning: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1).[4]  To functionally equal a Listing, the claimant's impairment must result in "marked" limitations in two domains of functioning or in an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).

A "marked" limitation in a domain occurs when the claimant's impairment interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2)(i).  "Marked" also means "more than moderate" but "less than extreme." *Id.*  A "marked" limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id.*  An "extreme" limitation in a domain occurs when the claimant's impairment interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(3)(i).  "Extreme" limitation also means a limitation that is "more than marked" and is the rating given to the worst limitations.  *Id.*  However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function.  *Id.*  It is the equivalent of the functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean.  *Id.*

Finally, the ALJ must use a "whole child" approach when determining whether a claimant's impairment is functionally equivalent to a Listing.  Social Security Ruling ("SSR") 09-1p, 2009 SSR LEXIS 1.  Under this approach, the ALJ starts the evaluation "by considering the

---

[4] These are similar, but not identical to, the autism spectrum disorder Listing's Section B requirements.

child's functioning without considering the domains or individual impairments." *Id.* After identifying "which of a child's activities are limited," the ALJ then determines "which domains are involved in those activities" and "whether the child's impairment(s) could affect those domains and account for the limitations." *Id.* An impairment "may have effects in more than one domain" and the ALJ must evaluate limitations caused by an impairment "in any affected domain(s)." *Id.* (quoting 20 C.F.R. § 416.926a(c)). Finally, the ALJ "rate[s] the severity of the limitations in each affected domain." *Id.* "This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id.*

> Here, the ALJ found the following for the Child's six functional domains:
>
> - <u>less than a marked</u> limitation in acquiring and using information;
> - <u>less than a marked</u> limitation in attending and completing tasks;
> - <u>less than a marked</u> limitation in interacting and relating with others;
> - <u>no</u> limitation in moving about and manipulating objects;
> - <u>less than a marked</u> limitation in the ability to care for himself; and
> - <u>no</u> limitation in health and physical well-being.

ALJ Op. at 3, ¶ 5.

Plaintiff substantively challenges the ALJ's decision-making in three of these domains. *See* Pl Br. at 12-21.

    a.    The ALJ does not adequately explain his reasoning for finding that the Child has a "less than marked" limitation in the ability to care for himself

Plaintiff first challenges the ALJ's finding that the Child "has a less than marked limitation in the ability to care for himself." Pl. Br. at 14-15. The entirety of the ALJ's evaluation is as follows:

> A teacher's questionnaire indicated that the claimant had a difficult time during transitions (Exhibit 7E). However, the IEP did not indicate any significant problems

8

> managing the school setting (Exhibits 1E, 4F). The claimant's father reported difficulties in self-care, which included reminders to engage in personal hygiene such as bathing, brushing his teeth and wearing weather appropriate clothing; reminders to perform household chores; an inability to go outside independently; and an inability to engage in time management skills. Additionally, he is precluded from using sharp knives (Exhibits 3F, testimony).

ALJ Op. at 6.

As Plaintiff highlights, this analysis does not articulate the basis for finding a "less than marked" limitation; for example, the Child's "inability to go outside independently" or "inability to engage in time management skills" could just as easily constitute an "extreme" limitation. *See* Pl. Br. at 15. *See* 20 C.F.R. § 416.926a(e)(3)(i) ("We will find that you have an 'extreme' limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities.").

> b. The ALJ does not adequately explain his reasoning for finding that the Child has a "less than marked" limitation in attending and completing tasks

Similarly, the ALJ found that the Child has a less than marked limitation in attending and completing tasks. ALJ Op. at 5. The ALJ acknowledged "a history of high functioning autism and [that the Child] received special education services since the 1st grade." *Id.* The ALJ noted some improvement in a December 2019 IEP, specifically that the Child "focuses on the task given and sometimes needs to be redirected," but that the Child nevertheless

> has a hard time staying on task if it does not interest him; he has improved with completing his homework, but is still forgetful at times and leaves his homework at home; he receives extra time to complete assignments and tests, which are modified; and he chooses to draw instead of following what the class is doing.

*Id.*

The ALJ identified more evidence of some improvement: that the "mathematics teacher reported that small group instruction works well. An October 2020 teacher's questionnaire indicated that the claimant had no problem to an obvious problem in all realms of this domain."

9

*Id.* But again, despite the fact that the Child "worked well with one-on-one instruction," the Child still

> has a difficult time during transitions and completing assignments independently. In November 2021, the claimant's mathematics teacher reported that the claimant occasionally needs to be promoted to refocus due to a class distraction or off task behaviors; he is easily distracted. Similarly, the claimant has some problems completing tasks at home. The claimant's father testified that the claimant needs constant reminders to take care of personal needs and household chores.

*Id.* (internal citations omitted).

Again, without fully explaining why, the ALJ found that, despite the fact that "the evidence indicates and the claimant's father testified that the claimant needs redirection and reminders to perform tasks, the evidence fails to support a marked limitation in this domain." Without an adequate rationale, the Court cannot meaningfully review the ALJ's opinion.

        c.    The ALJ does not adequately explain his reasoning for finding that the Child has a "less than marked" limitation in the ability to interacting and relating with others

Finally, Plaintiff challenges the ALJ's finding that the Child has a "less than marked" limitation in interacting and relating with others. Pl. Br. at 18. Here, the ALJ's factual identification is more thorough. The ALJ noted, for example, instances of positive interaction with others such as counsel/behaviorist Jeanie Ruban's observation that the Child was a "nice young man," a "gentle force in counseling," "never afraid to speak up" and a "pleasure to have in counseling groups." ALJ Op. at 6. Another example: the Child "was noted to enjoy a variety of activities that included playing video games, reading manga books and playing various sports with

10

friends." *Id.*[5] And, though the Child could not venture alone for "safety purposes," he "always goes out with his cousin." *Id.*

However, the evaluation criteria discuss a child's ability "to initiate and develop friendships with children who are your age and to relate appropriately to other children *and* adults, both individually *and* in groups." 20 C.F.R. § 416.926a(i)(2)(v) (emphases added). They focus on being "able to solve conflicts between [the child] and *peers* or family members or adults *outside* your family." *Id.* (emphases added). And on a child's ability to "intelligibly express . . . feelings, ask for assistance in getting . . . needs met, seek information, describe events, and tell stories, in *all* kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with *all* types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers)." *Id.* (emphases added). It is unclear how most of the facts cited by the ALJ address these criteria. *See Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (finding the ALJ's improper cherry-picking of evidence was insufficient to show "broader development" of plaintiff's lack of symptoms).

Additionally, as with the other domains of functioning discussed above, it is unclear how the ALJ reconciled these observations with, for example, consultative psychologist Dr. Yalkowsky's observation that the Child, while "generally pleasant and friendly," had "social skills impacted to some degree" by his autism spectrum disorder. *Id.* Or the observation that "[i]n terms of communication function, some pragmatic speech issues were notable as he often had difficulty finding the proper way to express his thoughts and some repetition was necessary in order for him to comprehend the examiners communications." *Id.* Or the Child's father's observation that the

---

[5] The Court cannot discern from the ALJ's Opinion how the first two activities—neither of which are inherently social or collaborative—demonstrate the lack of a marked limitation in the ability to interact and relate with *others*.

11

Child "is precluded from going outside independently and again, demonstrates limited motivation for socially-based recreation activity." *Id.* Perhaps most glaringly, the ALJ's analysis on this point simply trails off. *Id.* (The entire final sentence: "Of note, the claimant's").

Accordingly, the ALJ's opinion on this factor also evades meaningful review. This justifies reversal and remand for further, more fulsome evaluation. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) ("[W]hether the ALJ grants a treating physician's opinion substantial or little weight, the regulations also provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation.") (quoting 20 C.F.R. § 404.1527(d)(2)).

### III.   CONCLUSION

For the reasons above, the Court will **VACATE** the ALJ's April 15, 2022 decision denying the Child's Benefits, R. 15-21, and **REMAND** to the SSA for further proceedings consistent with this Opinion. An appropriate Order follows.

August 28, 2024                                                                                              /s/Evelyn Padin, U.S.D.J.